HOGAN AND WIFE vs. JOHN B. LEPRETRE, *surviving partner* of A. F. STONE & Co.

*An appeal from a decree of the Mobile Circuit Court.*

Where a deed of trust has been made to secure the payment of money, and the trustee sells real estate in pursuance of said deed, and the *cestui que use* becomes the purchaser, but afterwards abandons the purchase, gives no credit in pursuance of it, and accepts of no conveyance, but procures a re-sale of the property by the trustee, such first sale will not be set up and sustained by a court of equity in opposition to an application to redeem the property, by the payment of the money, with interest, which the deed was made to secure.

If, after such abandonment of the first sale, the *cestui que use* procures a second sale to be made of the same property, by the same trustee, without any renewal of his authority, at which the property is purchased at half the amount for which the first sale was made, the nominal purchaser in this last case being merely the medium or conduit of transfer to the *cestui que use,* such second sale will be held void.

The analogy between a mortgage and deed of trust holds thus far : they are both conveyances to secure the payment of money ; and the right to redeem, before a sale is effected, is allowable at any time in either ; and in neither afterwards.

Hogan conveyed a lot and certain bnildings in the city of Mobile, accompanied with relinquishment of dower, to Gordon, as trustee, to secure A. F. Stone and Company against any loss which they might sustain on account of their having become indorsers for him on a note given to the Mobile Bank. Gordon was authorised to sell, upon the indorsers being subjected to the payment of the note, after giving certain notice by advertisement. Hogan failed to meet the curtail-

ments, and the indorsers had the money to pay. Gordon was requested to sell the property, and did sell it; and Stone and Company, the indorsers, for whose benefit the trust was made, became the purchasers, at the price of two thousand six hundred dollars. But the purchasers, being advised, as they say, that this sale was not valid, on account of the property having been bought by the *cestuis que use*, refused to have it carried into effect, would not accept of any conveyance, and gave no credit to Hogan on account of the sale. They requested Gordon to sell the property again; which he did, McLosky became the purchaser on this second sale, for $1300; and he soon afterwards conveyed the property to the indorsers, Stone & Co. The proceeds of this sale not being sufficient to repay the sum paid by the indorsers for Hogan, suit was brought by A. F. Stone & Co. and a recovery had, against one Vincent, Hogan's security, for upwards of fourteen hundred dollars, the balance due after deducting the thirteen hundred dollars made by the second sale. Hogan filed his bill against A. F. Stone & Co. and McLosky, praying that both sales might be held for nought; that he might be allowed to redeem the property, by satisfying the amount paid for him by Stone & Co. with interest, and that, for the purpose of ascertaining the amount due, if any, an account be taken of the rents and profits which the defendants had received, from the occupation of the premises, together with the amount received on the suit against Vincent, and for general relief. The defendants in their answer, deny all fraud, and rely upon the second sale.

The decree of the Circuit Court establishes the first sale, denies to the complainant the privilege of redemption, and awards to him the amount of money, which, according to this adjustment of the controversy, he has over-paid. This decree of the court, in recognising the first sale, and in refusing to the complainant the privilege of redeeming the premises, is here assigned for error,

Hogan & wife
vs.
Lapretre.

STEWART, for Plaintiff in error.

A deed of trust on real estate, we contend, is in the cha-·racter of a mortgage ; and the property is subject to redemption. The courts of England have, for ages, leaned to the side of the right of redemption. But a practice has been. growing up in this country, having a tendency to overthrow all the guards against fraud, which have been set up by eminent·jurists. Such, it would seem, must be the result, if deeds of trust are not to receive such adjudication as will. permit the right of redemption.

In support of this general principle of the right to redeem, on deeds of trust, the court is referred to the following authorities—7 *Johns. Ch. R.* 40—1 *Maddox,* 515—4 *Kent's Com.* 136, 137, 152—2 *Bridgw. Dig. page* 359, *sec.* 279, *p.* 341, *s.* 133—2 *Vern.* 520—1 *Powell on Mortgages,* 121, 122—1 *Ver.* 488—2 *Atk. Rep.* 120—2 *Schoales & Lefroy,* 217, 660, 667, 668, 669—2 *Johns. Ch. Rep.* 30—9 *Vesey, jr.* 271—2 *Fonblanque,* 261.

That the doctrine of cutting off the right of redemption should apply to personal property, may not be so injurious ; but if it be made to apply to land, where the instrument is a deed of trust, that mode of conveyance will be resorted to, where the party who is to give the security is under necessitous circumstances, for the purposes of usury and oppression.

The decisions of the state of New York that militate against the right of redemption, do not apply to this case, because they are made in pursuance of a statute of that state.—4 *Kent's Com.* 183, '4—*see note.* The weight of the English authorities is in favor of the right of redemption.

Independent of the general principle, there are in this case peculiar circumstances, which entitle us to the right of redemption. This right is unquestionable, until there has been a sale of the property ; but here there has been no valid sale ; besides, the trustee has divested himself of the power to sell ; on what plausible grounds then can the privilege of redeeming the property be denied ? It is true, there were

two sales in this case; but neither of them, as I affirm, was <sub></sub>Hogan & wife
valid. The first sale cannot prevail, because it was not car-  vs.  Lapretre.
ried into effect by a conveyance; and because, having been
abandoned by the purchaser and the trustee, and left with-
out being completed by a conveyance, and being held for
nought by the purchasers in their answer, the court cannot
give it validity against the consent of the complainant, and
thus deprive him of his right of redemption. For the doc-
trine that a conveyance by the trustee is necessary to con-
summate the title, of the purchaser—See 4 *Kent's Com.* 137,
138, 186, 187—5 *Bacon,* 102—*Sugden on Powers,* 349, 392.

The second sale was invalid, because the trustee had no
power to make it. He had exhausted his power by his first
defective sale. A trustee has but a naked power; when
once exercised, it is gone. The purchase by McLosky was
merely colorable: it was for the benefit of Stone and Com-
pany; and being for but half the sum brought by the first
sale, a court of equity cannot sustain it. Would equity per-
mit a party to abandon a first purchase, and thereby embar-
rass the title, that he might obtain the property on a second
sale for half the amount which he had first agreed to give?
This is the sale relied on by the defendants; but it was re-
garded as void by the court below.

According to the deed of trust, no sale could have been
made without giving up and cancelling the note. The sale
then, to be good, must bring the amount. The first sale, in
fact, brought sufficient to cancel the note; but it was not can-
celled. The sale was given up by the purchasers, who are
the defendants, and for that reason also, can have no pre-
tence for setting it up. But if the deed should be so con-
strued as to admit of a sale, only bringing part of the sum,
and if it be contended that the first sale did not bring enough
to authorise the note to be cancelled, still there was no cre-
dit given on the note, nor any other release for any part of
the debt: the sale then, could not be supported, the deed of
trust not having been complied with.

Hogan & wife
vs
Lapretre.

It is plain then that neither sale can be supported; the one was abandoned by the defendant, and never carried into effect, and the other is obviously fraudulent, and without authority, and besides, was held void by the court below. Indeed, the party in the first sale having elected the day of sale, upon that election the power of the trustee is gone. There was here a right of election : the party must abide by his choice.—3 *Comyn's Dig.* 160, 161—1 *Maddox' Ch.* 250—1 *Bay's R.* 215—5 *Bacon's Ab.* 94.

As to what is a proper and sufficient execution of the power of the trustee, see *Sugden on Powers*, 193, 210, 211, 212, 268, 270, 284, 349, 352, 392, 399, 405.

The deed given upon the second sale is not good ; neither was the power fairly exercised, it not being on the application of all those for whom the trust was given. And the court will not resort to any extraordinary power to cure a legal defect, when, as here, there is any unfairness in the transaction.—5 *Bacon's Ab.* 101.

But if either of these sales could have been regarded as taking away the right of redemption, that right was restored by the subsequent suit for the balance of the money. It has been doubted, whether, where there has been a foreclosure, the party can proceed, at all, for the balance of the money due ; but this seems to be clear, that if he can so proceed, he by so doing, opens the foreclosure. On this subject, the court is referred to 8 *Vesey, jr.* 527—13 *Vesey, jr.* 198—3 *Brown's Ch. R.* 125.

Here, as I have stated, there was no foreclosure. The defendants; however, sued on the bill, and recovered more than was due them. Estimating the previous rents and profits, they had enough by the first sale, which the Circuit Court sets up as valid, to pay themselves ; they had therefore no right to sue Vincent. But there being in fact no foreclosure, and the power of the trustee being gone, the trust cannot be executed, except by consent of parties, or in a court of chancery. And if such court be resorted to, it will let in the right

of redemption. As to the course of courts of equity in regard to foreclosure, see 5 *Bacon's Ab.* 101—*Sugden on Powers,* 352.

The defendants having received more money than is due, consistent with the sale, it is a waiver of their right under the sale.

Reference was also made to 1 *Johns. Ch. R.* 409, 425.

ELLIOT, *contra.*

The case cited by counsel from 4 *Kent,* makes in favor of the defendants in error. The principle which is there supported is, that contracts of this kind are to be 'construed according to the intention of the parties. What were the intentions of Hogan and wife ? Obviously to convey the legal title to the trustee, to be subject, on certain conditions, to final sale, without being subject to any right of redemption afterwards. 4 *Kent,* 298, shows that modern trusts correspond, in principle, to the ancient uses. Express trusts are allowed to sell lands, for the benefit of creditors, in which case the whole estate in law and in equity vests in the trustee, subject only to the execution of the trust.—4 *Kent,* 298, 304.

In this case, either the first sale was valid and operative, or the second is. If the second is void on account of the first ; then the first must be good, and a court of chancery will aid a defective execution of the power.—See *Sugden on Powers.*

If the first sale was void, on account of those becoming purchasers for whose benefit the trust was made, or for any other reason, then the sale was a mere nullity, and could not impair the validity of the second sale, which must be regarded as good, and a proper execution of the power. On the supposition that the first sale was void, how could it have such effective operation as to defeat the second sale. The first sale could not be, at the same time both void and operative.

As to the second sale being colorable, the complainants have made witnesses of the defendants; and they, by their

Hogan & wife
vs.
Laprotre.

answer, deny all fraud and unfairness, and their statements must be taken as true, unless contradicted by two witnesses, or one witness and strong corroborating circumstances; but there is no such contradiction of the answers in this case.

The case in 5 *Johns. Rep.* 441, shows that where the conduct of a trustee is fair and *bona fide*, a court of chancery will maintain his proceedings, if he should not have, minutely in all things, pursued, the power. If by a sale, the property fail to bring the amount which it ought to have brought, or would have brought by pursuing the power more strictly, chancery will rather hold the trustee responsible for the amount of injury, than to make the whole proceeding void, where there was no fraud.

A suit on a bond or note for a balance, after foreclosure, where there has been a sale, does not open the foreclosure, the amount made by the property being ascertained.—See 4 *Kent's Com.* 175; also, 5 *Cowen*, 380. The weight of authorities is in favor of this doctrine both in England and America. The suit then against Vincent, after there had been a sale, could not have opened the foreclosure, if it had been a case of mortgage. But this is not a mortgage; but a deed of trust : and therefore, the authorities of counsel, if they had supported the position contended for, would still have been inapplicable to the case.

It is said that the application for this sale was not made by all of the *cestuis que use.* This ground is taken on account of a *lapsis pennæ,* Ashur F. Ames being put for Ashur F. Stone. The objection needs no further answer.

It has been contended, that the note was to be given up to be cancelled. But it is evident, that the intention of the parties must have been, that the note should be given up to be cancelled when it was satisfied. The first sale not being esteemed valid, the property was sold a second time, and did not bring the amount of the note : it ought not therefore to have been given up to be cancelled.

In regard to the inadequacy of price, the defendant, Mc-Losky's answer, which must be taken as true, contradicts the position.

HOPKINS, in reply.

In equity, the character of the conveyance is determined by the intention of the parties. Any agreement in the deed, or in a separate instrument, which shows that the parties intended the deed should operate as a security for the re-payment of money, will make it a mortgage, and give to the mortgagor the right of redemption. If a conveyance be absolute, it may be shown by parol proof to be a mortgage, as the court has decided during this term. A court of chancery never sustains, but sets aide any agreement in such a conveyance, which provides for the destruction of the right of redemption, or for its forfeiture, if it should not be exercised in a limited time. The parties to this deed of trust had no other intention, in the execution of it, than to secure to Stone & Co. the re-payment of the debt mentioned in the deed, in the event that they should pay it as the indorsers of Hogan. This intention of the parties must, according to settled principle, give to the conveyance the character of a mortgage. The introduction of a trustee, as a party to the deed, who has no beneficial interest in the estate conveyed, and none in the debt secured, should not be allowed to prevent the application of the principle. The object of such a contrivance is to destroy the right of redemption, if the payment of the money be not made before the trustee sells. If the deed had been made without the intervention of a trustee, directly to the persons who are the *cestui que trusts*, the court would preserve the right of redemption in defiance of an agreement in the conveyance, that the estate should be irredeemable after failure to pay the debt. Why should the right be less secure in this case? Under the pressure of necessity, Hogan would as readily have conveyed the estate to Stone & Co. with an agreement that he would forfeit his right of redemp-

Hogan & wife
vs.
Lapretre.

tion, if he should fail to pay the debt when it became due, as he did to the trustee, with power to sell and convey the estate absolutely, if the debt should be unpaid at the maturity of the note. If he had made a conveyance to them upon such agreement, the object of the agreement would be defeated by the principles, on which a court of chancery uniformly acts. Shall not the same principles be applied to put down the same object, when the creditors endeavor to accomplish it by a deed of trust? If, instead of this deed, a formal mortgage had been made to Gordon, which stated that the object of the conveyance was to secure the repayment to Stone & Co. who were no parties to the mortgage, of a debt due to them, the right of redemption would exist and would not be impaired by a grant of authority in the mortgage to the mortgagee to sell and convey the estate absolutely, upon the default of the mortgagor. In such a case, the mortgagee would have as much interest as he has in this, and the objects of the mortgage would be identical with those of this deed of trust.

The trustee and creditors abandoned the first sale, which was made under the deed of trust. The last sale did not produce half the sum required to pay the debt, and the creditors obtained a judgment for the balance, which Hogan has satisfied. If the deed shall be considered a mortgage, and the sale by the trustee equivalent to a foreclosure, the suit for the balance opened the foreclosure, and restored the right to redeem. This is the settled doctrine in England. As the creditors are in possession of the estate, and claim under the last sale, there is nothing to prevent the application of the doctrine. If our opinion, that the deed should be treated as a mortgage, be erroneous, there are other grounds upon which the decree should be reversed. That the second sale was void, the decree determines, and neither party complains of this part of the decree. The only appeal was taken by Hogan and wife, from the part of the decree, which established the first sale, and it is this part of the decree that wil

be reviewed here. If the defendants in error had been dissatisfied with the part of the decree which held the second sale void, they had a right to appeal from it. If the second sale could be brought to the view of this court, it would be held void. The first sale made it a breach of trust in the trustee to make the second. The first sale should have been carried into effect—no satisfactory excuse has been given why it was not. That the creditors were the purchasers at the sale, does not justify the trustee in the abandonment of it : they had a right to make a fair purchase.—4 *Kent's Com.* 137, 138. The second sale was made upon the request of the creditors, and without the consent of Hogan. It produced one half only of the sum, which the creditors agreed at the first sale to pay for the estate. If the second sale were valid, Hogan would sustain an injury to the amount of the difference between the prices at the two sales. To prevent the injury the sale must be disregarded. The trustee had exhausted his power to sell by making the first sale.

*Sugden on Powers*, 3, 4, 5—193, 210, 211, 212, 268, 269, 352, 392, 399, 405, was cited, to show the first sale was void.

The second sale was void. But from it the creditor received part of his debt, and the balance upon a judgment against another person, who was bound for the debt intended to be secured by the trust : this balance was paid by Hogan. The creditors have, therefore, received the whole of their debt, and no part of it from the first sale. If a sale were made before the time appointed, or without the advertisement required, it would be void ; and chancery, upon the application of the grantor, would set it aside. If the grantor, upon his application to set aside the sale, expressed his willingness to pay the money when the decree he asked, should be made, and should then pay it, he would regain the title relieved from the burden of the trust. If the sale had produced a partial payment, and the grantor had paid the balance, he would have a right to set aside the sale, and the

51

Hogan & wife
vs.
Lapretre.

trust would be chargeable only with the sum, which the void sale had produced. What pretext is there for establishing the first sale, which was never completed? If, after that unexecuted sale was made, the creditors had obliged the debtor to pay, or the debtor had voluntarily paid the debt, with other means than those included in the trust, would not the title to the estate be in the debtor, unincumbered by the trust? Could the title be disturbed by the assertion of rights under the sale, which was not followed by a conveyance, and was disregarded in the collection of the debt? The first sale which produced a sufficient sum to discharge the debt, deprived the trustee of power to make the second: the second was a breach of trust, and void. A chancellor would have prevented it, upon application, by injunction. The first sale has never been acted upon by a conveyance of the estate, pursuant to it. It has been disregarded in the steps taken by the creditors to collect their debt; a part of it they have received from the second void sale, and the balance from other funds of the debtor than the trust. The part produced by the second sale, is a charge upon the trust, but it has no connection with the first sale : it was not produced by that sale, and cannot support it. Upon what ground is the first sale to be established? If it were upheld, the debtor cannot be placed in the situation, in which he would have been, had that sale been carried into effect, and his debt satisfied with the proceeds of it. In that event, he would not have parted with the sum of money which was required to pay the part of the debt, that the proceeds of the second sale did not extinguish. That sum he could have invested in real estate, which would have increased in value as the land included in the trust has. If the first sale be established, the creditors will be confirmed in their title to an estate for which they did not pay with their own money—they paid for it in part, with money of the debtor, which a decree confirming that sale, would treat in effect, as a loan made by the debtor to the creditors—a forced loan. The first sale is void because the trustee had authori-

ty to make it upon condition that he applied the proceeds, and the whole proceeds to the payment of the debt—he made no such application. The debtor has credit for nothing until the second sale. As the sum for which the first sale was made was not received and appropriated as the trust required, the trust was not executed. That the trust was not executed by carrying the first sale into effect, was the fault both of the trustee and of the *cestui que trusts*. It was the duty of the trustee to have required the delivery of the note, the payment of which was secured by the deed; and it was the duty of the *cestui que trusts*, who were the purchasers, to have surrendered it to be cancelled. If the trustee had refused upon the delivery of the note to convey the estate, the purchasers upon a bill for the purpose, and proof that they had offered to comply with the terms of the purchase, would be entitled to a decree for a specific performance. In this case the purchasers induced the trustee to commit a breach of trust, they refused to abide by their purchase, and required the trustee to make in three or four months after the first sale, the second, which produced one half only of the sum, for which the estate sold at the first sale. For this sum the debtor received a credit upon his note, as a payment made at the time of the second sale, and the balance of the note he has paid out of his other resources. The collection of the note was, therefore, enforced by the purchasers upon the ground that the first sale was void; yet they now claim the benefit of the first sale, and a decree for a specific performance of it. When and where was a decree for specific performance made, in a case, in which the sale had been disregarded in every respect by the party, who applied for such a decree? Both the sales are void—thr first, because the trustee did not execute his power, by conveying the estate—receiving the proceeds—applying them as the trust required; and because the *cestui que trusts*, who were the purchasers, gave no credit for the sum which they agred to pay—disregarded the sale, and caused a second one to be made. The second sale is void; because the first

<span style="float:left">Hogan & wife<br>vs<br>Lapretre.</span> sale made it a breach of trust in the trustee to make another, without the consent of the debtor as well as of the creditors. The trust still exists, but it is chargeable only with the sum, and the interest which has accrued upon it, that the second sale produced. The *cestui que trusts* are liable to Hogan for the rent of the estate from the time they took possession until the aggregate amount of the rents shall be ascertained by an account, which should be taken between the parties. The value of the rents exceeds the amount, including interest upon it, for which the second sale was made. The complainants are entitled to a decree, setting both sales aside—directing the conveyance made pursuant to the second sale to be cancelled—and ordering the *cestui que trusts* to pay to them the excess of the value of the rents over the price, at which the second sale was made.

By Mr. Justice THORNTON:

This case comes up by appeal from the decree of the chancellor below, which is sought to be reversed, on the ground assigned as error, that the court dismissed that part of the bill praying a redemption of the mortgaged premises. This assignment, though made with a view to an isolated point in the cause, does in fact, involve the whole merits of the decree: for if the appellant, who was also complainant below, be entitled to redeem, or what is equivalent thereto, to vacate all the proceedings had under his trust deed, and be reinvested with title, upon the payment of the money, which it was intended to secure, the whole of the action of the chancellor below, in the interlocutory, and final decree, is erroneous.

The history of the case is this, as presented to us by the bill, answers, &c. A. F. Stone & Co. who were a mercantile firm, consisting of Ashur F. Stone, John B. Lepretre, and Thomas F. Townsley, in the city of Mobile, became indorsers of a promissory note, negotiable and payable at the Bank of Mobile, for the sum of two thousand eight hundred dollars,

made by the said Hogan, on the nineteenth of August, 1823, and discounted for him, in said Bank; that with the intent to secure them from injury, by said indorsement, the said Hogan executed a deed of trust, conveying the premises therein described, to the defendant Gordon, who was empowered, in case of failure on the part of Hogan, to renew, or pay the said note, upon the request of the said A. F. Stone & Co.; to sell and dispose of the property; to apply the proceeds to the cancelment of the note, and pay over the balance, if any, to the said Hogan. The said Hogan having failed to pay, or renew the said note, the *cestuis que use*, of whom the defendant Lepretre, is the surviving partner, paid the same, and requested the trustee to proceed and sell the property. The property was accordingly exposed, and knocked off at the sum of twenty six hundred dollars, to the *cestuis que use*, who were the highest bidders therefor. After this, without any thing more done towards the completion of this sale, the trustee, upon an erroneous impression, entertained, as it seems by him, in common with the *cestuis qui use*, that the sale was illegal, because they were the purchasers, exposed the premises to sale a second time, without the consent of the complainant, when the defendant McLosky became the purchaser, at the reduced price of thirteen hundred dollars. A conveyance was executed by the trustee to him, and he afterwards conveyed by a quit claim deed to the said firm of A. F. Stone & Co. From the answers of the defendant, it is fairly deducible, that he was a mere medium or conduit of transfer, to the said A. F. Stone & Co. to avoid the supposed illegality of an immediate purchase by them. It is not averred in the answer of the trustee, that any money passed; and McLosky says, that he did not intend to injure any one of the parties, or "to affect the interest, in the slightest manner whatever, of the one, to the prejudice of the other." He says "he would willingly have reconveyed to the complainant for the cost to him, if the complainant had proposed to take the property at that price, and would at any time previ-

*Hogan & wife
vs.
Lapretre.*

Hogan & wife
vs.
Lapretre.

ous to his conveyance to A. F. Stone & Co. have conveyed to said complainant Hogan, if he would have paid, or renewed his said note in Bank, whereon the said A. F. Stone & Co. were indorsers; but as this defendant was informed, and had good reasons to believe, that said complainant refused to take up, or renew his said note; and that the same was paid by A. F. Stone & Co. as his indorsers; that not being disposed, as before mentioned, to retain said premises, at the price he had *bid* for them, he released said premises to said A. F. Stone & Co. for the same amount he had paid therefor, they being the only persons who proposed to take them at that price." After the transfer from McLoskey, the two partners, Stone and Townsley, conveyed to the defendant Lepretre. The property was in the possession of A. F. Stone & Co. by lease from complainant, at the time of the execution of the deed of trust, and has ever since been in the possession of the defendant Lepretre, either claiming it as joint owner with his copartners, or as his sole property, by virtue of their conveyance to him as aforesaid. After the last sale of the property, suit was brought by A. F. Stone & Co. in New Orleans, upon the note secured by this deed of trust, and a recovery had against one Vincent, who was the security of complainant, for the balance due upon it, after crediting the sum of thirteen hundred-dollars, the proceeds of the last sale. After answer filed by Townsley, he died, and a guardian *ad litem* was appointed by the court below, for his infant heirs. Since the removal of the cause into this court, Stone has also died; his death being suggested on the record, and the cause considered, as it well may be, to survive against Lepretre, the remaining member of the late firm of A. F. Stone & Co. The bill of the complainant prays an account to be taken of the rents and profits, a cancelment of the several conveyances of the property, and a redelivery of it to him, upon payment of whatever amount may be found to be due from him upon said full accounting between the parties. There is also the general prayer for relief. The final decree

rendered below, in pursuance of an interlocutory decree rendered in the cause, refuses the specific relief sought ; but under the general prayer, undertakes to affirm the first sale of the property, made by the trustee Gordon ; and sustains an account taken in pursuance of the said interlocutory decree. The error assigned, is in substance as already stated, " that the decree of the court repudiated the right to redeem," which was the main object of the bill ; and in view of the statement of facts above exhibited, we will now proceed to consider it. I will premise, however, that the only point upon which this cause can be made to rest, is that of redemption, as presented by the special prayer ; for however expansive and efficacious the general prayer of a bill in chancery may be, of which it was said by an English chancellor, that it was as comprehensive as the Lord's prayer ; yet I cannot admit that any relief can be afforded under it, which is inconsistent with that specifically sought. So that if no right of redemption is here recognised, there is no warrant for a decree which confirms, as the one rendered below in this cause does, the first sale made of the property by the trustee. For not only does the complainant not desire it, but he and the defendants both, have consented to eschew it. But although no such decree be authorised, yet it is *necessary* to consider the effect of this sale, as also of the second one, for if the trust has been executed by either, so as to be obligatory upon the complainant, he cannot have the relief which he seeks, and the error alleged as the specific ground of the appeal, cannot be maintained. In determining the effect of the first sale, as to its obligatory force upon Hogan, which is assumed as the basis of the decrees below, we have only to ask whether, if the defendants were to attempt its establishment against him, they could enforce it in a court of equity : for if it could not be so enforced, it seems to me, *a multo fortiori*, that it cannot be done under the present circumstances, where both parties have concurred in its abandonment. Now that sale was deserted of its parents as abortive, before it was fully

Hogan & wife brought into existence. The trustee made no deed of con-
vs.
Lapretre. veyance; the purchasers would have none; no money was credited to the grantor; on the contrary, they proceed, as though it had never been, to make a second sale, at which, as might have been anticipated, if it was not so intended, only one half of the amount bid at the first, was realized : and this result was doubtless contributed to at least, by the very fact of a former sale, thus capriciously abandoned, without the knowledge or consent of the grantor. I feel satisfied that this first sale cannot be set up and established in this cause, however it might be, if the complainant were seeking its execution against the purchasers : as to the last sale it would be manifest injustice to recognise it. Then, considering both of these sales vacated, as I think we are bound to do, under the facts and pleadings in this case, what are the rights of the respective parties ? The *cestuis que use* are entitled to the benefit of the security afforded to them by the deed of trust, and the grantor is entitled to pay off the debt, and relieve his property from the incumberance; of which right, I consider his bill as a suitable assertion. To this extent, the analogy holds between a deed of trust, and a mortgage. They are both conveyances to secure the payment of money. At any time, in either, before a sale of the property, a redemption is allowable; but in neither after the sale is effected. According to the modern doctrine respecting mortgages, and the established rule of decision in this court, the only decree on a bill to foreclose, is the sale of the premises, if the debt be not paid by a day certain, at such time, and in such manner as in the discretion of the court may seem most likely to result in the best price. After this sale there can of course be no redemption. So in relation to deeds of trust. The final result in both is the sale of the property. The only difference is in the mode and manner of the sale. In the former there is the intervention of a court, fixing the time, and it is conducted by the officer of the court. In the latter, the parties have themselves fixed upon the time

by a contract, which it is competent to them to make; as they have also selected an individual, who shall conduct it. If it be objected to, this latter procedure, in comparison with the former, that the scrutiny to which the transaction is subjected in its progress through the courts of the country, is an invaluable safeguard in all cases of trust like this, I have only to reply, that in the latter case also, an appeal may at any time be made to the same tribunal, and the sale be arrested, where fraud, or oppression, or usury, or any other vice in the transaction, may make it obnoxious to such an interference.

The result of our examination of this cause, in which we have been greatly aided by the lucid argument of counsel, is that the sales by the trustee, Gordon, and all the subsequent conveyances, be held for nought; that the decree below be reversed; and that the case be remanded to effectuate the principles of this opinion.

It is decreed that an account be directed to be taken by the Judge of the Circuit Court, the basis of which shall be, that the complainant be charged with the amount paid for him by the said firm of A. F. Stone & Co. on the account mentioned in the trust deed, with interest thereon, and that he be credited with all reasonable rents and profits of the said property mentioned in said deed of trust, since the possession was transferred to the defendants, over and above the value of the lasting improvements which may have been put upon it by them, if any: and that he be credited with all payments which he may have made upon the said note : that after the return of the said report, if the said complainant shall, in some reasonable time to be designated by the said court, pay and satisfy to the commissioner who may be appointed by said court, the balance, if any, so reported to be due from him, then the deed of trust aforesaid shall be held as void, and the said complainant be restored to the possession of the premises therein conveyed; but if he fail to pay the said amount, that then the said commissioner shall be directed to

52

proceed, in lieu of the said defendant Gordon, to sell and dis pose of the said premises according to the terms in the said deed specified.